18 A.3d 865

**STATE of Maryland**

v.

**Emanuel TEJADA.**

**No. 103, Sept. Term, 2009.**

Court of Appeals of Maryland.

April 26, 2011.

150

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

John L. Kopolow, Assigned Public Defender (Paul B. De-Wolfe, Public Defender, Laurel, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

**BARBERA, J.**

Respondent, Emanuel Tejada, was convicted by a jury of two counts of attempted murder, armed robbery, and related offenses. He appealed the judgments of conviction, arguing, inter alia, that the bifurcated jury selection process denied him the right to an informed and comparative rejection of prospective jurors. The Court of Special Appeals held that Respondent preserved that claim for appellate review and the trial court erred in bifurcating the jury selection process.

We granted the State's petition to review the judgment of the Court of Special Appeals. The State has opted not to challenge that court's judgment on the merits and argues only that Respondent failed to preserve his objection for appellate review. For the reasons that follow, we hold that the Court of Special Appeals did not err in finding the issue to be preserved for review.

## I.

In October 2007, Respondent and a co-defendant stood trial in the Circuit Court for Montgomery County, on various charges stemming from an attempted robbery of an armored truck in Silver Spring, Maryland.[1] The trial was scheduled to take seven days.

The jury selection process began with a venire of 60 prospective jurors. The trial court dismissed 17 of them for cause, leaving 43 venirepersons for the peremptory challenge phase of the process. Respondent and his co-defendant were each entitled to exercise 20 peremptory challenges and the State, 20 (10 per defendant).[2]

---

1. Respondent's co-defendant is not involved in this appeal.

2. The number of peremptory challenges available to each party is based on the flagship charge and its potential penalty. *See* Md.Code (1973, 2006 Repl.Vol.), § 8–420 of the Courts and Judicial Proceedings Article; Md. Rule 4–313. In this case, both Respondent and his co-defendant were charged with attempted first degree murder, which carries the possibility of a life sentence upon conviction. *See* Md.Code (2002), § 2–205 of the Criminal Law Article. In that circumstance, "[e]ach defen-

Midway through the exercise of peremptory challenges, the court noted that the parties were "going to run out of jurors." By that time, Respondent had used 14 challenges, his codefendant 12, and the State 6. The parties and the court discussed the situation [3]:

[Co-defendant's Counsel]: Your Honor, I know that I have strikes left, and I know that—

[The Court]: You've got more strikes than we have jurors left.

[Co-defendant's Counsel]: Well, that's what I was going to raise.

[The State]: We're going to have to do another panel.

[The Court]: Oh, yes, we're going to have to do it when I get back [later today].

The trial court then asked the clerk to inform the jury commissioner that the court would "need another panel, but not until later this afternoon, 3:30." The parties exercised several more challenges. The court then recessed for lunch, noting at that time that Respondent had four challenges remaining, his co-defendant eight, and the State five.

When proceedings resumed after the luncheon recess, the court instructed the lawyers of "a problem" with the new jurors requested from the jury commissioner:

[The Court]: We got a little problem, Houston. The jurors that we have, first of all most of them down there have already been through, they were not screened for seven

---

dant who is subject on any single count to a sentence of death or life imprisonment ... is permitted 20 peremptory challenges and the State is permitted ten peremptory challenges for each defendant." Md. Rule 4–313(a)(2).

**3.** As shall be seen, the State raises a number of arguments in support of its position that the Court of Special Appeals erred in determining that Respondent preserved for appellate review his claim that the trial court erred in conducting the process of jury selection. Those arguments are best understood only if it is known precisely what was said, when, and by whom. We therefore detail the numerous discussions among the court and counsel throughout the two days during which jury selection took place.

days. In fact, the jury commissioner knows that these jurors that they have left cannot stay five days. And so [there is no] point in us going through that exercise in futility because that's going to be a problem. So there are two proposals ... we can either start all over tomorrow. [The commissioner can bring in] about 100 jurors and maybe we'll even be able to get the bigger courtroom, and ... just start all over, or we can, which is the proper procedure[,] keep the seven or eight or whatever we have and then just select the rest of them tomorrow morning. Now, understand something, finishing the selection today is not an option. We don't have enough in the venire.

Counsel for Respondent's co-defendant indicated that she was "inclined to start over" with the entire jury selection process. The State opposed that proposal, stating: "I don't know why we would start again and excuse [the jurors already selected]. We've been through the process with them," and selecting an entirely new jury would "knock [the State] a half a day or a day behind [schedule]." The State was willing to hear defense counsel's reasons for "start[ing] fresh" but did not know of a reason requiring the court to do so. The court responded:

[The Court]: I'm not so sure you can—I suppose anything that the parties agree to, you could do it, but I'm not sure that ... you can do that, start over unless you all agree.
[The State]: I don't know why we would.
[The Court]: Because we're basically in the middle of the jury selection process. If we were carrying it on today and just had a group of jurors come up, we would never get rid of the ones we've already picked.

After a short discussion regarding a possible break to allow the parties to review the relevant law on jury selection, the exchange continued:

[The Court]: ... I'm not so sure that there's any real choice, Mr. State. I mean, I suppose as long as it's not anything that's illegal or against any rule, the parties could agree to anything, but absent an agreement we're still

basically in the middle of selecting a jury, and we would never start over in the middle of that process simply because—

[The State]: I agree.

[The Court]: Right, go ahead.

[The State]: The only thing I've stated is if the Defense believes there is prejudice because of this, that they put it on the record now so we know what it is, and then we can address that now.

[The Court]: You're not going to find a lot of help in the rules. I know you've already looked at that. Well [Md. Rule 4–312(f) ] addresses the question of additional jurors. "When the number of jurors of the regular panel may be insufficient to allow for selection of a jury, the Court may direct that additional jurors be summoned at [ ] random from the qualified jury wheel and thereafter [ ] at random in a manor [sic] provided by the statute." So the rule provides that we can do exactly what I'm going to do, and that's summons additional jurors. I don't know that we can—

[Co-defendant's Counsel]: I just maintain my objection for the record, Your Honor.

[The Court]: Sure. Now if you come up with some reason overnight why we can do anything different, then we can still, we can still, dismiss this group.

The discussion then diverted briefly towards determining the appropriate time for the venirepersons to return the follow morning, and then continued:

[Respondent's Counsel]: And at this particular point, I would just join in the general objection and look at things tonight and let Your Honor know if anything is different.

[The Court]: I think the State's Attorney makes a good point. If there's some specific objection to sending the jury home and bringing in extra jurors, I'm sure that counsel would put it on the record, but there is no real specific

objection available, but I will give you the opportunity to look over the issue in the evening.

The court then dismissed the jurors for the evening.

At the outset of proceedings the following morning, the court stated: "We didn't have enough people in [yesterday's] panel to complete the selection process. And so we are bringing some more in this morning to see if we can get the 12, or probably 16 jurors that we need." After logistical discussions, Respondent's counsel addressed the court regarding his objection to the bifurcated jury selection:

[Respondent's Counsel]: We have just a quick matter here and that is, Your Honor, we, having thought more about the issue about what's happening here, is I would just like to renew my objection to the procedure.

[The Court]: Very well, so noted.

[Co-defendant's Counsel]: And my original objection—

[The Court]: So noted.

[Respondent's Counsel]: And it has to do—

[Co-defendant's Counsel]:—is just continuing—

[The Court]: So noted.

[Respondent's Counsel]: Right, it has to do with what [co-defendant's counsel] was about to say yesterday, which is that the idea of comparative striking—looking at who we're striking and seeing what is left on the panel.

[The Court]: So noted. Okay?

After the court began voir dire of the new panel of prospective jurors, co-defendant's counsel again raised the issue of the bifurcated selection process:

[Co-defendant's Counsel]: And I raise again my original objection with regard to—I just want to make sure it's ongoing—about [ ] doing the supplemental jury selection, Your Honor.

[The Court]: There's really not a supplemental jury. It's just a continuation of—

[Co-defendant's Counsel]: Right, a continuation.

[The Court]: If we had the people yesterday—

[Co-defendant's Counsel]: Right.

[The Court]:—we would've continued it yesterday. We simply didn't have the people. And, notwithstanding counsel's objection, you were given the option of starting all over from zero as if we never started and you declined and decide[d] that because—

[Co-defendant's Counsel]: No, no, no. I asked for—

[The Court]:—you have extra strikes—

[Respondent's Counsel]: Your Honor, we both—

[The Court]:—you would use those.

[Respondent's Counsel]: Your Honor, I respectfully disagree. Both of us lodged—

**[The Court]: You want me to excuse the people, the nine? I can do that. And your objection goes away.**

**[Respondent's Counsel]: That was our request yesterday.**

[The Court]: Well, do you want me to do it today?

[Co-defendant's Counsel]: We don't have enough jurors again.

[The Court]: Oh, yes, we do.

[Co-defendant's Counsel]: We have 50.

[The Court]: Okay, well—

[Co-defendant's Counsel]: But we had 65 yesterday.

**[The Court]: I'll reserve ruling on your objection and if you want to excuse the nine that we have picked today, I'll do it.**

**[Respondent's Counsel]: You'll reserve ruling on that.**

[The Court]: Uh-huh.

(Emphases added.)

The court resumed the voir dire. Shortly thereafter, the court and parties discussed how long the selection process was taking. The court noted:

**[The Court]: Now, the option of starting over is not a real option unless you want to do this again tomorrow because guess what? We don't have any more jurors.**

[Co-defendant's Counsel]:—have any—yes.

[The Court]: That is it.

[The State]: (Unintelligible) Mr. [Respondent's Counsel] and Ms. [Codefendant's Counsel]—

**[The Court]: But I'm not depriving you [of the option to start over]. If that's what you want to do, we'll just have to bring some people in tomorrow, but you think about that at lunch.**

**[Respondent's Counsel]: Your Honor, given Your Honor's statement just now, my client would waive that objection.**

[The Court]: Okay, that's fine.

(Emphases added.)

The parties returned after a recess, at which time counsel for Respondent's codefendant renewed her objection to the jury selection process.

**[Co-defendant's Counsel]: Your Honor, you, before the break, gave me until after lunch to decide whether I wanted to waive, like [Respondent's Counsel] did, on the objection of the—the selection of the jury and having a second panel to supplement the panel that we had already selected yesterday.**

**I'm going to stand by my objection and elect to request that a new panel—I would ask for 150 jurors to be brought tomorrow to select a new jury, with exercising all the strikes and do it tomorrow.**

[The Court]: Very well.

[Co-defendant's Counsel]:—from scratch.

[The Court]: Yes?

[The State]: Briefly, the—

**[The Court]: Objection is overruled.**

[The State]: All right, then I—we should proceed then with finishing the voir dire process.

**[The Court]: Just for the record, this is not a supplemental panel; this is—if we had the jurors present yesterday, we would have simply had more brought up except that there were no further jurors and we had to**

wait until this morning to continue the jury selection process.

So it isn't that we have selected a panel and now we're selecting another one; we never did complete the selection process. We got nine jurors, I believe, out of the 12 that we need.

[Co-defendant's Counsel]: Eight, Your Honor. One of them called, remember 118 called and—

[The Court]: Well, but he was selected.

[Co-defendant's Counsel]: Oh, yes.

[The Court]: But today he was excused because he has— and I excused him for cause because—

[Co-defendant's Counsel]: Yes.

[The Court]:—quite frankly, it wouldn't be fair to make counsel use a strike. The juror neglected to tell us yesterday that he wasn't able to be here on Thursday, tomorrow. So, anything else?

**[Respondent's Counsel]: Yes, Your Honor. I misunderstood Your Honor's position. I apologize to the Court. I think my words at the bench were "having heard what Your Honor just said, I waive my objection." Now that I understand Your Honor's position that you are overruling her request, then I would enjoin [sic] in her request because I had waived with the understanding that Your Honor was going to say "whatever you two decide, I, the Judge, will grant," and I'm not saying that's what you said, I'm just saying that was my understanding.**

**And now that I know that Your Honor had overruled the objection, I think I misunderstood Your Honor and I made it clear that what my waiving was based on—and now that I clearly understand Your Honor's position, I would join in [co-defendant's counsel's] objection.**

[The Court]: Very well. Overruled.

(Emphases added.)

The parties resumed jury selection, during which Respondent exercised the remainder of his peremptory strikes. On

the eighth day of trial, the jury found Respondent guilty of multiple offenses. Sentencing followed in due course.[4]

On appeal to the Court of Special Appeals, Respondent raised a number of claims including that the trial court erred in its conduct of the jury selection process. The State countered that Respondent had failed to preserve the claim for appellate review and, even if the claim was properly before the appellate court, it had no merit. The Court of Special Appeals, in an unpublished opinion, held that Respondent had preserved the claim for appellate review and that the trial judge erred by conducting a bifurcated jury selection process, because it had the effect of denying Respondent his right of informed and comparative rejection.[5] The Court of Special

---

**4.** The court sentenced Respondent as follows: attempted second degree murder (victim 1), 25 years; attempted second degree murder (victim 2), 25 years, consecutive; robbery with a dangerous weapon, 20 years, consecutive; conspiracy to commit robbery with a deadly and dangerous weapon, 10 years, consecutive; use of a handgun in the commission of a crime of violence, 20 years, consecutive; armed carjacking, 20 years, concurrent with the use of a handgun sentence.

**5.** In so holding, the Court of Special Appeals followed *Booze v. State*, 347 Md. 51, 698 A.2d 1087 (1997). We held in *Booze* that the provisions of then-Rule 4–312 "need to be read together, and, when so read, they communicate clearly this Court's intent that, to the extent possible, the parties should have before them the entire pool of prospective jurors before being required to exercise any of their peremptory challenges.... By adopting Rule 4–312(g), we have made that intent a mandate of State judicial policy, and, in the absence of a waiver or other compelling circumstance, we insist that it be followed." 347 Md. at 69, 698 A.2d at 1096.

The version of Rule 4–312(g) in effect when we decided *Booze* was still in effect when Respondent was tried and provided in pertinent part:

(g) Designation of List of Qualified Jurors.—Before the exercise of peremptory challenges, the court shall designate from the jury list those jurors who have qualified after examination. The number designated shall be sufficient to provide the number of jurors and alternates to be sworn after allowing for the exercise of peremptory challenges pursuant to Rule 4–313. The court shall at the same time prescribe the order to be followed in selecting the jurors and alternate jurors from the list.

This Court rewrote Maryland Rule 4–312 by Order dated December 4, 2007 (effective January 1, 2008). Current Rule 4–312(e) contains substantially the same language as did former Rule 4–312(g). Our

Appeals vacated the judgments and remanded Respondent's case for a new trial.

The State filed a petition for a writ of certiorari, which we granted to consider the following questions:

(1) Did the Court of Special Appeals err in determining that a complaint that there was not a sufficient number of prospective jurors designated prior to the beginning of the exercise of peremptory challenges, as required by Maryland Rule 4–312, is preserved as long as a defendant who had not exhausted all of his or her peremptory challenges objects before the jury is sworn in?

(2) Even if an objection before the beginning of the exercise of peremptory challenges is not required, does a party waive appellate review of the issue by continuing to exercise strikes after the issue is raised by the trial court or another party?

(3) Even if an objection before the beginning of the exercise of peremptory challenges is not required, does the trial court have discretion to reject a party's attempt to retract a waiver of the objection?

## II.

The State does not challenge the holding of the Court of Special Appeals concerning the merits of this case—that the trial court violated then-Rule 4–312(g) by commencing the peremptory challenge phase of jury selection without a sufficient number of prospective jurors to allow all peremptory challenges to be exercised. Rather, the State asks us to decide only whether the Court of Special Appeals erred in reaching the merits of Respondent's claim that the trial court improperly bifurcated the jury selection process. Each of the three questions presented raises a different theory as to why, in the State's view, that claim was not properly before the

analysis is governed by the Rule as it was codified at the time of Respondent's trial.

Court of Special Appeals for review. We address each theory in turn.

### A.

The State first contends that the Court of Special Appeals erred in concluding that Respondent's objection before the jury was sworn sufficed to preserve for appellate review his claim of error in the trial court's handling of the jury selection process. The State argues that Respondent was required to object to the size of the venire before exercising any peremptory challenges because it was clear by then—*i.e.,* after the court excused for cause 15 venirepersons, leaving only 45 prospective jurors—that there remained an insufficient number of venirepersons to accommodate the parties' exercise of all their allotted peremptory challenges (and to select alternate jurors).

This Court's decision in *King v. State Roads Comm'n,* 284 Md. 368, 396 A.2d 267 (1979), informs the issue. In *King,* the trial court produced a venire of 25 potential jurors at the beginning of the peremptory challenge phase of jury selection, instead of the 20 required under (then-applicable) Maryland Rule 543 a. That Rule called for 20 venirepersons and provided that each party had four peremptory challenges, leaving 12 persons to be sworn as the jury. *King,* 284 Md. at 372, 396 A.2d at 270. A panel of 28 venirepersons was subjected to voir dire by the court. Three venirepersons were struck for cause, leaving 25 prospective jurors. The court allowed each of the parties to exercise the right to strike four prospective persons, then struck five of the remaining jurors to create the 12–person jury. *Id.* at 369–70, 396 A.2d at 268. We held that process to be erroneous because it violated the procedure outlined in Maryland Rule 543 a and left the judge in the position of "hav[ing] more to say about who would not sit on the panel than either of the parties." *Id.* at 372, 396 A.2d at 270.

Of relevance to the case at bar, *King* also presented the issue of whether the petitioners had preserved their appellate

objections by timely challenging the jury selection process in the trial court. In discussing that issue, we emphasized that,

> when, as here, a rule clearly sets forth the jury selection procedure to be followed, any dissatisfaction with the technical procedure actually utilized *must be expressed for the record before the jury is sworn* unless it can be shown that the complaining party both did not know and, with reasonable diligence, could not have known of the irregularity. Here, with a knowledge of Rule 543 a, which all parties and their counsel are charged with having, and being furnished with a list that contained more than twenty names from which they were to exercise their peremptory strikes, petitioners necessarily were cognizant of the irregularity so as to require that, *if they wished to register an objection, they do so before the jury was impaneled.*

*Id.* at 372–73, 396 A.2d at 270 (emphases added).

Because, through no apparent fault of the parties, we could not discern whether the petitioners had objected to the selection process before the jury was sworn, we vacated the judgments and ordered a remand "for certification by the trial court as to what occurred." *Id.* at 375, 396 A.2d at 271. Then, "if the court finds the petitioners did not make a timely objection, as specified by this opinion, the judgments previously recorded . . . should be re-entered; however, if it finds such an objection was registered before the jury was impaneled, a new trial should be provided." And, "if the trial judge is unable to reach a conclusion as to whether a timely objection was made, then, in that event, a new trial should be conducted." *Id.,* 396 A.2d at 271. Notably, in identifying the time before which an objection to the jury selection process must be made, we did not require, though we certainly could have on the facts presented, that the objection be made as soon as the objecting party knew, or should have known, of the erroneously conducted jury selection process. We were satisfied with a rule that deems such an objection to be timely so long as it is made before the jury is impaneled.

In the present case, the Court of Special Appeals applied the preservation rule that we announced in *King*, and we discern no good reason why it should not have done so. The State nevertheless raises several arguments for why the *King* rule should be abandoned in favor of a more stringent preservation rule, at least for purposes of the claimed error in this case. All of those arguments, the State points out, relate "primarily to the timing of the objection, rather than its substance." [6] We are not persuaded by any of the State's arguments.

The State first argues that Respondent was obligated, pursuant to Rule 4–312(g), to complain about the process the court was contemplating—calling for additional venirepersons—no later than at the outset of the exercise of peremptory challenges.[7] At the time of trial, Rule 4–312(g) stated: "Before the exercise of peremptory challenges, the court shall designate from the jury list those jurors who have qualified after examination." The State points to the time described in the opening clause of the Rule—"Before the exercise of peremptory challenges"—and argues that Respondent was required to object at that point. By that time, the State explains, Respondent knew that too few potential jurors remained to produce a full jury after accounting for all the peremptory challenges afforded to the parties. The State therefore argues that Respondent waived any objection to the

---

**6.** It is evidently for this reason that the State does not rely on Maryland Rule 8–131(a) in support of its non-preservation argument. That rule provides in pertinent part that, "ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Plainly, the issue of how to deal with the insufficient number of prospective jurors for the peremptory challenge phase was "raised" by both Respondent and "decided by" the trial court. *See Bundy v. State,* 334 Md. 131, 138, 638 A.2d 84, 88 (1994).

**7.** In that regard the State points out that Respondent should have known as soon as the venire was assembled in the courtroom that its size was insufficient, after strikes for cause, to accommodate the full exercise of the parties' peremptories. The State does not insist, though, that Respondent was required to lodge his objection at the very outset of the entire process.

size of the venire by not objecting before the exercise of any peremptory challenges.

We disagree with the State that Rule 4–312(g) is to be read as including a timing requirement for objections. The same rules used in statutory interpretation are used to interpret the Maryland Rules. *Dove v. State,* 415 Md. 727, 738, 4 A.3d 976, 982 (2010). We have often repeated that " '[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.' " *Bd. of Educ. v. Zimmer–Rubert,* 409 Md. 200, 214, 973 A.2d 233, 241 (2009) (quoting *Kushell v. Dept. of Natural Resources,* 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005)). We must read any of our rules of procedure "as a whole to ensure that none of its provisions are rendered meaningless." *Lonaconing Trap Club, Inc. v. Md. Dept. of the Env't,* 410 Md. 326, 339, 978 A.2d 702, 709 (2009) (citation omitted).

When read in its entirety, Rule 4–312 does not require that an objection to the number of qualified jurors designated by the court be made before the exercise of any peremptory challenges. Had we intended such a requirement, we would have said so explicitly as we did elsewhere in the Rule. For example, sections (a) and (e) of Rule 4–312, as they existed at the time of trial, specified respectively that a "challenge to the array [of jurors] shall be made and determined before any individual juror from that array is examined," and "a challenge for cause shall be made and determined before the jury is sworn, or thereafter for good cause shown." No similar explicit provision addresses the issue here.

Neither are we persuaded by the State's contention that Rule 4–323(c) required Respondent to object to the jury selection process before the parties began to exercise their peremptory challenges. That Rule states, in relevant part, that a party must object to a court ruling or order "at the time the ruling or order is made or sought." [8] The "ruling . . .

---

8.  Rule 4–323(c) provides in full:

made or sought" in the present case came, at the soonest, when the court announced that the parties were "going to run out of jurors." By that time the parties had exercised 32 peremptory challenges. At the outset of the peremptory challenge phase of jury selection there was but a possibility (albeit a highly likely one) that the parties would run out of prospective jurors before exercise of peremptory strikes and, if that did occur, only a chance the court would address the problem in a manner objectionable to Respondent.

Certainly it would have been far better had one of the parties or, for that matter, the court itself[9] recognized and addressed prophylactically the looming problem at the outset of the peremptory challenge phase. But no fair reading of Rule 4–323(c) obligated Respondent to raise the concern at that time, lest he waive any claim of error attendant to whatever action the court subsequently *might* take to remedy the problem. Beyond that, Respondent, of course, "made known to the court his objection to the ruling at the time the ruling was made," which is all that Rule 4–323(c) requires. *See Bundy v. State,* 334 Md. 131, 138, 638 A.2d 84, 88 (1994) (quoting *Graham v. State,* 325 Md. 398, 411, 601 A.2d 131, 137 (1992)).

(c) Objections to other rulings or orders. For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

**9.** We are reminded that, in *Booze,* this Court made clear the mandate of then-Rule 4–312(g) that, "[b]efore the exercise of peremptory challenges the *court* shall designate from the jury list those jurors who have qualified after examination[,]" (emphasis added), and "the number designated shall be sufficient to provide the number of jurors and alternates to be sworn after allowing for the exercise of peremptory challenges pursuant to Rule 4–313." *Booze,* 347 Md. at 58–59, 698 A.2d at 1091 (quoting Rule 4–312(g)).

For much the same reason, *Covington v. State*, 282 Md. 540, 386 A.2d 336 (1978), to which the State also directs us, does not assist its cause. We stated in *Covington* that "it is incumbent upon a litigant to *make known to the court an objection to the action of the court* at the earliest practicable opportunity." 282 Md. at 543, 386 A.2d at 337. Respondent correctly points out that "*Covington,* unlike *King* and the instant case, did not involve an objection to a jury selection procedure[,]" but rather a claim on appeal that defense counsel was foreclosed, at trial on an agreed statement of facts, from making closing argument. The trial court had found the defendant guilty before inviting defense counsel to make any comments he had before sentencing. We held that the matter was more properly resolved at a post conviction hearing. 282 Md. at 544, 386 A.2d at 338.

Notably, we decided *King* eight months after *Covington,* without any mention of the "earliest practical opportunity" statement in *Covington.* Moreover, we cited this same principle from *Covington* in *Bundy,* in which we considered whether the appellant had preserved for appellate review the claim that the trial court erred in allowing the State to exercise more than four peremptory challenges. We concluded, in the context of determining the timeliness of a challenge to the court's ruling allowing the State to use excess peremptory challenges, that a timely objection to such error was required under Rule 4–323(c) to "be lodged at the time an excess peremptory challenge is exercised because the trial judge may wish to remedy any error by recalling and seating the juror who was improperly stricken." *Bundy,* 334 Md. at 139, 638 A.2d at 89. That conclusion flowed from the recognized need to give the court the opportunity to correct the wrong, *i.e.,* seat the improperly stricken juror before the juror is excused and has left the courthouse. *See id.* at 140, 638 A.2d at 89.

The situation in the present case is not at all the same as in *Covington* or *Bundy.* Here, the court and counsel, including counsel for Respondent, debated the proper course of action as soon as the problem with the inadequate venire became obvious, and at that early juncture Respondent made known to

the court his view that starting the entire process anew was the correct course of action. Equally important, the court made no final ruling about how to proceed until the second day of jury selection. At that time, after further debate about the proper course of action, the court rejected the request of Respondent and his co-defendant to start anew the entire jury selection process and, only then, overruled their respective objections to proceeding with the bifurcated selection process. Further, unlike in *Bundy*, the nature of the error was such that, at any time before the jury was sworn, the court was able to reconsider its ruling and remedy the error by striking the prospective jurors remaining in the courtroom and starting the process anew.

In sum, the State has given us no good reason not to apply the general rule from *King* that an objection to the jury-selection process must be made before the jury is sworn.[10] Accordingly, we hold that Respondent preserved his objection by raising it before the jury was impaneled.

## B.

We turn next to the State's contention that Respondent waived appellate review by continuing to exercise peremptory challenges after he and his co-defendant raised the issue of the insufficient venire. The State argues that Respondent's use of challenges after his initial objection was "directly inconsistent" with his claim that he desired to have a sufficiently large venire for jury selection. We disagree. The exercise of peremptory challenges is not inconsistent with a request for a venire containing a sufficient number of jurors.

Like the Supreme Court, *see Batson v. Kentucky*, 476 U.S. 79, 91, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (peremptory challenges "traditionally have been viewed as one means of

---

**10.** We are not alone in applying a *King*-like rule that permits objections to irregularities in jury selection until the jury is sworn. *See Jones v. State,* 437 So.2d 628, 629 (Ala.Cr.App.1983); OKLA STAT ANN. tit. 22, § 634 (Lexis 2011); UTAH CODE ANN. § 78B-1-113 (1) (2011); VA.CODE ANN § 8.01–352 (2011).

assuring the selection of a qualified and unbiased jury" (citation omitted)), this Court long ago recognized that "[t]he right of peremptory challenge is deemed a most essential one to a prisoner, and is highly esteemed and protected in the law." *Turpin v. State*, 55 Md. 462, 464 (1881) (internal quotation marks and citation omitted); *cf. King*, 284 Md. at 370, 396 A.2d at 269 (noting that "a reasonable peremptory challenge right plays a vital role because it permits a party to eliminate a prospective juror with personal trials or predilections that, although not challengeable for cause, will, in the opinion of the litigant, impel that individual to decide the case on a basis other than the evidence presented"). The right to peremptory challenges in criminal trials is codified currently at Md.Code (1973, 2006 Repl.Vol.), § 8–420 of the Courts and Judicial Proceedings Article ("CJ"). *See* Md. Rule 4–313 (describing the procedure for exercising peremptory challenges in criminal trials).

There is no case in Maryland stating that a party's continued exercise of peremptory challenges waives appellate review of earlier phases of the jury-selection process. Indeed, such a rule would undermine the purpose of CJ § 8–420 and Rule 4–313, which is to recognize the "ancient," *Booze*, 347 Md. at 59, 698 A.2d at 1091, and "highly esteemed," *Turpin*, 55 Md. at 464, right of peremptory challenge.

The only case the State cites to support its contention is *Gilchrist v. State*, 340 Md. 606, 667 A.2d 876 (1995). There, the primary issue was whether the prohibition against race-based peremptory challenges, described in *Batson*, applied to challenges aimed at Caucasian venirepersons based on their race.[11] The trial court had dismissed the first jury, on *Batson*

---

11. *Batson* set forth the general proposition that "[p]eremptory challenges cannot be exercised to exclude members of a cognizable racial group from a jury." *Edmonds v. State*, 372 Md. 314, 328, 812 A.2d 1034, 1042 (2002). We have noted that "[t]he underlying purpose of *Batson* and its progeny is to protect the defendant's right to a fair trial, to protect the venireperson's right not to be excluded on an impermissible discriminatory basis, and to preserve public confidence in the judicial system." *Id.* at 329, 812 A.2d at 1042.

grounds, because defense counsel only exercised peremptory challenges against Caucasian jurors. The defense objected to the dismissal of the jury. When the second jury was chosen, defense counsel answered affirmatively when the court asked if the jury was acceptable. That jury later convicted Gilchrist. 340 Md. at 616–17, 667 A.2d at 880–81.

Gilchrist argued on appeal that *Batson* did not apply to peremptory challenges against Caucasian prospective jurors. In addition to advocating that *Batson* applied to Caucasian venirepersons as well as those who are African American, the State argued that Gilchrist waived his objection to the dismissal of the first jury by explicitly calling the second jury acceptable. In rejecting the State's waiver argument, we recognized that "a defendant's claim of error in the inclusion or exclusion of a prospective juror or jurors is ordinarily abandoned when the defendant or his counsel indicates satisfaction with the jury at the conclusion of the jury selection process." *Id.* at 617, 667 A.2d at 881 (quotation marks and citation omitted). The *Gilchrist* Court explained further:

> When a party complains about the exclusion of someone from or the inclusion of someone in a particular jury, and thereafter states without qualification that the same jury as ultimately chosen is satisfactory or acceptable, the party is clearly waiving or abandoning the earlier complaint about that jury. The party's final position is directly inconsistent with his or her earlier complaint.
>
> Nevertheless, where the objection was not directly "aimed at the composition of the jury ultimately selected," we have taken the position that the objecting party's "approval of the jury as ultimately selected . . . did not explicitly or implicitly waive his previously asserted . . . [objection, and his] objection was preserved for appellate review."

*Id.* at 618, 667 A.2d at 881–82 (citation omitted).

The State contends that *Gilchrist* stands for the proposition that "inconsistency results in a waiver." The State then argues that, "[s]ince continuing to exercise strikes is 'directly inconsistent' with a claim that a party wants to have a full

panel before exercising any strikes, the same waiver principle should apply." We disagree with such a generalization of the *Gilchrist* rule. Even if that rule applies beyond objections to the inclusion or exclusion of particular jurors, the State's argument is flawed because the continued use of peremptory challenges by Respondent was not "directly inconsistent" with his objection to the inadequate number of prospective jurors in the pool. The "directly inconsistent" circumstances described in *Gilchrist* involve a party's objection to the inclusion of venirepersons in, or exclusion from, a jury and a subsequent affirmative acceptance of the same jury by the objecting party. 340 Md. at 617, 667 A.2d at 881. The analogous "directly inconsistent" circumstances in this case would be Respondent objecting to the inadequate number of prospective jurors in the pool, but then later pronouncing his acceptance of either the pool or the final jury, as selected.

Of course, that did not occur. Rather, Respondent objected, early on, to the size of the venire and then continued to exercise peremptory strikes after the trial court indicated that it would bring in an additional panel of jurors later that same day. After learning that the jury commissioner no longer had enough prospective jurors available for another panel that day, the court advised the parties that they could keep the selected jurors and continue the next day, or start anew the entire selection process. Respondent and his co-defendant objected to continuing the next day, wishing instead to have the process started anew. The court overruled that objection. The next day, Respondent exercised his remaining challenges. Respondent, we note, never stated that the final jury, as chosen, was acceptable.

Once the selection process began, Respondent was required to engage in that process; it was not incumbent upon Respondent to discontinue the exercise of peremptory challenges in order to preserve for appellate review his objections to the jury selection process. Neither *Gilchrist* nor any other authority cited by the State requires a party to choose between, on the one hand, exercising all of his or her peremptory challenges and thereby waiving appellate review of deficient

jury selection procedures, and, on the other hand, not exercising all of his or her challenges and thereby facing a potentially less desirable jury at trial. Forcing that dilemma upon a party would be akin to requiring that, in order to preserve an objection to the admission of a witness's testimony, a party must refrain from cross-examination. Such a result is absurd. We therefore reject the State's theory of "waiver by exercise of peremptory challenge." We hold that Respondent did not waive his right to appeal the bifurcated jury selection process by continuing to exercise the peremptory challenges available to him.

## C.

Finally, the State presents the question: "[D]oes the trial court have discretion to reject a party's attempt to retract a waiver of the objection?" The "waiver" at issue is that of Respondent, from the second day of jury selection, regarding the trial court's decision not to begin anew the entire jury selection process.

Respondent initially objected to the bifurcated selection process and requested the process start over. On the second day of jury selection, the court explained that the option of starting anew was still available, to which Respondent's counsel replied, "my client would waive that objection." Following that, the court recessed. After the break, counsel for Respondent retracted the waiver:

> [Respondent's Counsel]: Yes, Your Honor. I misunderstood Your Honor's position. I apologize to the Court. I think my words at the bench were "having heard what Your Honor just said, I waive my objection." Now that I understand Your Honor's position that you are overruling [co-defendant's counsel's] request, then I would enjoin [sic] in her request because I had waived with the understanding that Your Honor was going to say "whatever you two decide, I the Judge, will grant," and I'm not saying that's what you said, I'm just saying that was my understanding.

And now that I know that Your Honor had overruled the objection, I think I misunderstood Your Honor and I made it clear that my waiving was based on—and now that I clearly understand Your Honor's position, I would join in [codefendant's counsel's] objection.

[The Court] Very well. Overruled.

There is nothing in the record that hints at the motivation underlying the judge's ruling: Did he believe he was required to accept Respondent's retraction? Did he believe he had the discretion to accept or reject the retraction, and exercised his discretion to accept it? All we know is that, when Respondent sought to retract his waiver, the judge simply said: "Very well. Overruled." We thus have no way to know the basis for the trial court's ruling. In short, the State seeks to introduce an issue now that was not generated at trial.

Moreover, answering the State's question presented, whether in the affirmative or the negative, would not change the outcome here. If we were to hold that trial judges, in the position of the trial judge here, have discretion to reject a retraction like the one made by Respondent's counsel, then the judge must abuse that discretion for an appellate court to reverse the outcome. Respondent does not allege that any abuse of discretion occurred, so no relief could be granted on that basis. Likewise, if we were to hold that a trial court does not have discretion to reject the retraction, then the trial court acted properly here by accepting the retraction and ruling on the underlying objection. By opining on the State's question presented, we would be "rendering [a] purely advisory opinion [ ], a long forbidden practice in this State." *Smith v. State,* 412 Md. 150, 176, 985 A.2d 1204, 1220 (2009) (quotation marks and citation omitted). We therefore shall not answer the third question the State has presented.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY MONTGOMERY COUNTY.**