*Christian Eric Adkins v. State of Maryland*, No. 735, September Term, 2022. Opinion by Zarnoch, J.

**AUTOMOBILES** – To convict a defendant for driving with a revoked license, the State must show that 1) the defendant was driving a motor vehicle, 2) at the time the defendant's license had been revoked, and 3) the defendant knew that the license had been revoked.

**STATUTORY CONSTRUCTION** – Section 16-303(c) of the Transportation Article ("Transp.") of the Maryland Code prohibits driving a motor vehicle with a suspended license and has been interpreted to require knowledge by the defendant that the license was suspended. Section 16-303(d) prohibits driving on a revoked license and should be interpreted *in pari materia* with § 16-303(c).

**CRIMINAL LAW – JURY INSTRUCTIONS – HARMLESS ERROR –** The circuit court erred in failing to instruct the jury that knowledge of the revocation was required to be proven before a defendant could be convicted of Transp. § 16-303(d). However, the error was harmless because the defendant stipulated that his driver's license was under revocation at the time he was driving and that he was properly notified of the revocation.

**CRIMINAL LAW – POSTPONEMENT –** The court did not abuse its discretion in denying a motion to postpone. Because the defendant failed to identify what information he was unable to present due to the court's denial, he was not prejudiced.

**CRIMINAL LAW – JURIES –** The defendant waived his argument that a juror was improperly seated who asserted she would "judge harshly" a case involving "alcoholism, use of alcohol, or any alcohol driving offenses."

Circuit Court for Queen Anne's County
Case No.: C-17-CR-21-000332

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 735

September Term, 2022

———————————————————————

CHRISTIAN ERIC ADKINS

v.

STATE OF MARYLAND

———————————————————————


Friedman,
Zic,
Zarnoch, Robert A.
   (Senior Judge, Specially Assigned),

JJ.

———————————————————————

Opinion by Zarnoch, J.

———————————————————————

Filed:  May 24, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland and the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Appellant, Christian Eric Adkins, was convicted by a jury in the Circuit Court for Queen Anne's County of driving while impaired by alcohol, driving without a required license, and driving on a revoked license. After Appellant was sentenced to an aggregate term of eight years' incarceration, he was granted the right to file a belated appeal to this Court, asking us to address the following questions:

> 1. Did the lower court err in failing to instruct the jury, as requested, concerning the *mens rea* required to convict Mr. Adkins of Driving on a Revoked License?

> 2. Did the lower court err in failing to postpone either the trial or sentencing proceedings?

> 3. Did the lower court err in failing to strike Juror 9 for cause?

For the following reasons, we shall affirm.

BACKGROUND

Considered in the light most favorable to the prevailing party, on January 3, 2021, at around 3:50 p.m., Deputy George Betts, a patrol officer from the Queen Anne's County Sheriff's Office, was stationed at the Atlantic Tractor store near 13716 Main Street in the town of Queen Anne. At around that time, Deputy Betts saw a silver 2016 Nissan Rogue come to a complete stop near a Royal Farms convenience store, proceed, and then "nearly run off the roadway[.]" That vehicle then entered a Shell gas station parking lot, circled the building twice, and then crashed into an unoccupied tractor trailer parked behind another nearby store, Vanishing Point Race Car.

As he was approaching the scene, Deputy Betts saw an individual running from the area near the Nissan Rogue towards the tractor trailer. When he got closer to that trailer,

the deputy found Appellant lying face down underneath the tractor trailer. Appellant was directed to come out, and Deputy Betts immediately smelled a strong odor of an alcoholic beverage on his breath, and also noticed that he slurred his speech. Asked why he tried to run, Appellant replied that he had been drinking and he was running from his girlfriend, who he claimed was nearby. The area was searched for Appellant's girlfriend and no other individuals were located near the scene.

Deputy Betts then searched the area where Appellant laid under the trailer and found keys to the Nissan Rogue, a cellphone, and a phone charger. He then searched the Nissan Rogue and found two empty mini liquor bottles in the driver's side door panel and an empty bottle of vodka in the back seat. Appellant was arrested for driving under the influence of alcohol and driving while impaired.

Back at the police station, Appellant declined to submit to either field sobriety tests or a breathalyzer. The Nissan Rogue was not registered to Appellant. Further, and significant to Appellant's first issue on appeal, Deputy Betts then learned, and the parties stipulated, that Appellant's driver's license was revoked on the date of the incident, and that Appellant had been properly notified of that revocation.[1]

Based on his training, knowledge, and experience, Deputy Betts opined that Appellant was under the influence of alcoholic beverages. In addition, the parties further stipulated:

---

[1] The parties stipulated to the following: "Defendant's license was revoked on June 25, 2014, and that the MVA mailed proper notice on June 10, 2014, February 20, 2018 and March 16, 2018 and that notice was not returned. Defendant did not have a valid license on the date of the incident."

2

On January 9th 2021, Christian Eric Adkins stated on a recorded line at 22 hours, 28 minutes and 52 seconds, when asked if he wrecked the girl's car, he states: Yeah, I did it on purpose. I was in one of my escapades, right, a manic bipolar episode. At 22 hours, 49 minutes and 23 seconds, I go and buy a couple of drinks. I come back and I get back there and what she do, she starts acting crazy so I took her car, end up in Queen Anne's County and I got a fucking DUI right up by the barns. They can't charge me for that because they didn't even see me get out of the car.

We shall include additional detail in the following discussion.

DISCUSSION

I.

Appellant first contends that the trial court erred in failing to instruct the jury as to the *mens rea* required to prove driving on a revoked license. The State responds that any error was harmless beyond a reasonable doubt because Appellant stipulated that his license was revoked and that he was notified of this status by the Motor Vehicle Administration. We agree with the State.

Before trial, Appellant requested the court give certain pattern jury instructions, including but not limited to driving under the influence of alcohol and driving while impaired by alcohol or drugs. There was no pretrial written request as to driving on a revoked license. Thereafter, the State requested a number of jury instructions, including, pertinent to our discussion, that the court read section 16-303(d) of the Transportation Article ("Transp.") of the Maryland Code (1977, 2020 Repl. Vol.) for driving on a revoked license. Prior to instructions, Appellant argued the court should amend the State's proposed instruction by informing the jury that knowledge was an element of driving on a revoked license, as follows:

3

[DEFENSE COUNSEL]: Thank you, Your Honor. With the jury instructions, the only addition I would make is to the driving revoked charge. I'm not sure if the Court's jury instruction has the element of knowledge, the *mens rea*, actual knowledge or wil[l]ful blindness, essentially. Also --

THE COURT: There isn't a jury instruction. Basically, it's the law.

[DEFENSE COUNSEL]: Right.

THE COURT: Which says: In order to convict a defendant, the State must prove that the defendant drove a motor vehicle on a highway or public use property in this state and that at the time the defendant's license and privilege to drive was revoked in the state.

[DEFENSE COUNSEL]: Okay. I would like to add the language about the *mens rea*, that he knew that he was driving with a revoked license. Additionally, the fact that the State also has to show that he had a license at one point and that's *Sullivan v. State*. If you've never had a license, you've never had a privilege that can be revoked, even with, you know, fictionally it is revoked. So it would be driving without a license, if you've never had a license.

[PROSECUTOR]: I don't think all that comes in. I think the jury instruction is just the statute.

THE COURT: [Defense Counsel], there is not a specific jury instruction for driving while revoked. So the Court is using the exact statute.

[DEFENSE COUNSEL]: Okay. Just for the record, I just wanted to make my objection.

THE COURT: All right.

The court then gave the following instruction:

A person driving a motor vehicle on a highway or public use property on revoked license and privilege. In order to convict the defendant, the State must prove that the defendant drove a motor vehicle on a highway or public use property in the state and that at the time the defendant's license or privilege to drive was revoked in this state.

At the end of the jury instructions, Defense Counsel asked to approach the bench

and the following ensued:

4

[DEFENSE COUNSEL]: I'm satisfied subject to the objections that I made and suggestions that I made for the driving revoked.

THE COURT: Okay.

[DEFENSE COUNSEL]: I just wanted to put that on the record.

THE COURT: So the objection prior that was made about adding language for the *mens rea*.

[DEFENSE COUNSEL]: Correct.

THE COURT: Why don't you make that objection.

[DEFENSE COUNSEL]: The *mens rea* and that the State has to prove --

THE COURT: That he has a valid license.

[DEFENSE COUNSEL]: -- that he actually has a license or had one at some point.

THE COURT: All right. Objection is noted. Thank you.[2]

Maryland Rule 4-325(c) provides: "The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." "[T]he decision whether to give a jury instruction 'is addressed to the sound discretion of the trial judge,' unless the refusal amounts to a clear error of law." *Preston v. State*, 444 Md. 67, 82 (2015) (citation omitted). In determining whether a trial court has abused its discretion we consider whether "(1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case;

---

[2] On appeal, Appellant only maintains his objection that the court should have instructed the jury that knowledge is required to prove driving on a revoked license.

and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction[.]" *Ware v. State*, 348 Md. 19, 58 (1997).

There is no pattern jury instruction for driving on a revoked license, so the court read the statute. We have previously held that reading a statute is an acceptable form of instruction. *See Pearlstein v. State*, 76 Md. App. 507, 517 (1988) (holding there was no error when, instead of giving instructions in the form requested by appellant, trial court read verbatim from the language of the statute (discussing *Cardin v. State*, 73 Md. App. 200, 219 (1987))); *accord Mattingly v. State*, 89 Md. App. 187, 193 (1991). However, we have also cautioned that incomplete or inaccurate instruction may amount to reversible error. *See, e.g., Abbott v. State*, 190 Md. App. 595, 644-45 (2010) (vacating appellant's conviction where, although court read the applicable statutory provision during instructions, those instructions were incomplete).

As both parties recognize, although there is no case interpreting the instructional requirements of Transp. § 16-303(d) for driving on a revoked license, Transp. § 16-303(c), driving on a suspended license, has been the subject of prior case law.[3] Those cases have concluded that "[k]nowledge is an essential element of driving with a suspended license" as "'[m]ens rea is required for the charge of driving while suspended.'" *Steward v. State*, 218 Md. App. 550, 560 (2014) (quoting *State v. McCallum*, 321 Md. 451, 457 (1991)).

---

[3] Transp. § 16-303(c) provides that "[a] person may not drive a motor vehicle on any highway or on any property specified in § 21-101.1 of this article while the person's license or privilege to drive is suspended in this State." Section 16-303(d) states that "[a] person may not drive a motor vehicle on any highway or on any property specified in § 21-101.1 of this article while the person's license or privilege to drive is revoked in this State."

6

> In order to prove that an individual had the requisite *mens rea* at the time of the offense, the State must present evidence that the defendant either had actual knowledge that his or her drivers' license was suspended, or that the defendant was deliberately ignorant or willfully blind to the suspension.

*Id.* (citing *McCallum*, 321 Md. at 458; *Rice v. State*, 136 Md. App. 593, 604 (2001)).

And:

> Actual knowledge exists when a person has "an actual awareness or an actual belief that a fact exists." Deliberate ignorance, on the other hand, exists when a person "believes it is probable that something is a fact but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth."

*Id.* (citations omitted).[4]

In our view, § 16-303(d) requires an identical interpretation for those driving on a revoked license. Both prohibitions have existed for more than a century. *See* Md. Code (1911), Art. 56, § 139. They were enacted at the same time. And for some 75 years, they were included in the same sentence. *See, e.g.*, Md. Code (1977), Transportation Article, § 16-303 ("A person may not drive a motor vehicle on any highway in this State while his license or privilege to drive is refused, canceled, suspended or revoked.").

They were divided into separate subsections by Chapter 472, Laws of 1986. This change was apparently authored by the General Assembly's Code Revision Division and was clearly non-substantive, as is apparent from the purpose paragraph of the bill's title:

An ACT concerning

~~Maryland Vehicle Law~~ <u>Transportation Article</u> Revision

---

[4] In addition, Transp. § 12-114(a) provides that the MVA will provide notice in either of the following two manners: "(1) [b]y personal delivery to the person to be notified; or (2) [b]y mail to the person at the address of the person on record with the Administration."

7

> FOR the purpose of renumbering certain provisions of the ~~Maryland Vehicle Law~~ <u>Transportation Article</u>; <u>directing the Michie Company renumber certain cross-references</u>; and making stylistic changes.

Moreover, as appellant cogently observes:

> [T]he language of subsections (c) and (d) are verbatim, save for the substitution of "suspended" for "revoked." Moreover, the offense of driving while revoked is no more of a "public welfare" offense than the offense of driving while suspended. Last, should there be any doubt, the sentences for each offense are identical. . . .

We agree with appellant and add we can think of no reason why a suspended license should be treated differently than revocation for purposes of elements of proof. The two provisions are poster children for the *in pari materia* doctrine. *See Chen v. State,* 370 Md. 99, 106 (2002) ("Two statutory provisions concerning the same subject matter are considered to be *in pari materia* and must be interpreted accordingly."); *Murphy v. State*, 100 Md. App. 131, 135 (1994) (statutes *in pari materia* must be construed harmoniously). Therefore, knowledge of the revocation is demanded as part of the proof under § 16-303(d). We are persuaded that the trial court erred by not instructing the jury that knowledge is a required element of driving while a person's license is revoked in this State. Nevertheless, that conclusion is not the end of our discussion.

An instructional error is subject to harmless error analysis. The United States Supreme Court has held that "the omission of an element is an error that is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 15 (1999). And, this Court has explained *Neder* as follows:

> In applying harmless error analysis in *Neder*, the Supreme Court framed the question before it as "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted

8

element." *Id*. at 19. If, in answering that question, "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id*. at 17.

*Nottingham v. State*, 227 Md. App. 592, 611 (2016); *see generally Dorsey v. State*, 276 Md. 638, 659 (1976) (error will be harmless when reviewing court, upon independent review, is able to declare a belief beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the verdict).

With respect to whether Appellant had the requisite *mens rea*, *i.e.*, the knowledge that his driver's license was revoked, that issue was uncontested as he stipulated that his driver's license was revoked on the date of the incident, and that he was properly notified, three times, of that revocation. Moreover, Defense Counsel presented a theory of the case that a primary reason he ran from the police was because "[h]e was driving without a license[.]" Under these circumstances, we have no difficulty concluding that the trial court's error in failing to instruct as to the *mens rea* to support the offense was harmless beyond a reasonable doubt. *See Geiger v. State*, 235 Md. App. 102, 112 (2017) ("It is in cases where the facts are hotly contested and where contradictory credibilities clash with one another that a trial error might readily shift the balance.").

II.

Appellant next asserts trial court error for failing to postpone the trial and sentencing. We shall address the claims sequentially.[5]

Trial

Appellant argues the court failed to exercise discretion and this "reflexive" denial amounted to an abuse of discretion. The State responds that Appellant made no such argument in the trial court and that the court properly exercised its discretion, especially given the case history.

Here, Appellant's case was transferred to the Circuit Court for Queen Anne's County when he made a jury demand in the District Court on June 3, 2021. Appellant moved for a speedy trial under the Sixth Amendment to the United States Constitution on June 7, 2021 and a jury trial was set for August 20, 2021.[6]

On August 18, 2021, the State moved to continue the trial because one of the State's witnesses was unavailable. Appellant initially objected to this continuance, but then withdrew that objection. Appellant then filed a consent to postpone the trial date to

---

[5] We note that the charges herein were transferred to the circuit court on June 7, 2021, and the case was tried on September 3, 2021, when Maryland courts were still operating pursuant to administrative orders related to the Covid-19 pandemic. *See generally Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 351-63 (2022) (providing background of changes to court administration during the Covid-19 pandemic); https://mdcourts.gov/sites/default/files/import/coronavirus/marylandjudiciarycovid19time line.pdf and https://www.mdcourts.gov/coronavirusorders.

[6] Notably, this was well within the 180-day time limit discussed in *State v. Hicks*, 285 Md. 310 (1979); *see also* Md. Rule 4-271; Md. Code (2001, 2018 Repl. Vol.), § 6-103 of the Criminal Procedure Article.

September 3, 2021, and the trial date was reset accordingly. Attached to the court's order changing the trial date was a provision that trial was set for one (1) day and that requests for further postponements were subject to the case management plan attached to the notice of jury trial. That plan provided the following procedure:

> **Change of trial, hearing, or conference dates**. A party who desires a change of the time of any trial, hearing or conference must obtain several possible alternate times from the Assignment Commissioner and, within 5 days thereafter (i) attempt to secure the agreement of all other parties to one of those alternate times and (ii) file with the Clerk a written request for change to one of those alternate times. On its own initiative, or if all parties are not agreed, the Court may act upon the request. Whether or not the parties have discussed and/or agreed upon an alternate date, any existing Notice of Trial, Scheduling Order or Pretrial Order remains in full effect until the change has been approved **in writing** by the Court or the Assignment Commissioner. If a change of date is approved, all instructions or provisions of the original Notice or Order so modified remain fully applicable to the new date.
>
> All written requests for a change in date must include a certificate of service pursuant to Maryland Rule 1-323 and a Notice of exclusion of personal identifier information per Maryland Rule 1-322.1.

No such request was made until the morning scheduled for Appellant's jury trial when the following ensued:

> [DEFENSE COUNSEL]: Yes, Your Honor, brief preliminaries. In speaking with Mr. Adkins, he is just now beginning to work and seeking to retain private counsel and wanted to ask the Court to postpone this matter to allow him to obtain private counsel.
>
> THE COURT: Absolutely not, absolutely not. This was set for a jury trial. We brought in a full panel. Another jury trial was bumped today so that this one would go forward. We are proceeding today with a jury trial.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor. May we stand down?
>
> THE COURT: Yes.

11

<u>Sentencing</u>

Appellant also asserts that the court placed "expediency and case management" over the reasons for his request to postpone sentencing and that this was an abuse of discretion. The State responds that the court properly exercised its discretion, contending that Appellant was not prejudiced given that the court was presented with his criminal history and facts related to mitigation.

After the jury returned its verdict, Defense Counsel asked for a postponement of sentencing, as follows:

> Your Honor, Mr. Adkins asked if we could postpone sentencing. He, quite frankly, may be getting some time here and he has two children that are living with him and he needs to make arrangements, ages two and three. Now, he is -- I can understand the Court's concern, perhaps, but he is living at a halfway house. He is living at Grace House, attending their intensive outpatient program, as well, getting random urinalysis. I do have a letter from them, if you wish to see it. I'll be presenting it, also, when I come back -- if we come back to court for sentencing.

After hearing that the State was ready, the court denied the motion, stating: "Court is prepared for sentencing today. This case has been hanging out there for some time. I think it's time to go ahead and proceed."

The State then recounted Appellant's criminal history in open court. That included: one (1) conviction for driving under the influence per se; five (5) prior convictions for driving while impaired; two (2) prior convictions for driving while revoked; as well as prior convictions for trespass, impersonating an officer, and second degree assault. The State also referred to the sentencing guidelines, noting that the guidelines were five to ten years under the subsequent offender statute because Appellant had prior DUIs. Because

12

Appellant had a "major record," with a number of probation violations, the State asked for a sentence of seven years without any suspended time. In the alternative, the State requested Appellant be sentenced to ten years, seven to serve.[7]

In response, Defense Counsel informed the court Appellant was being treated for his alcohol addiction and was an inpatient for two weeks. He went from that treatment to a halfway house where he remained as a resident at the time of trial and sentencing. Appellant attended daily meetings at the halfway house, submitted to urinalysis and attended an "intensive outpatient program." He had two children, ages two and three, whom he provided for by working "some odd jobs here and there when he can get it." Defense Counsel asked the court to consider this history of recent treatment and to impose a suspended sentence.

Appellant then addressed the court and stated: "I'm just growing older, I'm at a good spot in my life right now. Just trying to get better for me and my kids. That's it." He also admitted that, when this occurred, "I was in a bad alcohol problem back then. That's when the other stuff happened, too, but I got let off of that, January 3rd."

Having heard this, the court sentenced Appellant to an aggregate sentence of eight (8) years. The court stated, in part:

> I'm not going to order probation. He's been down that road before. Mr. Adkins, if you're going to take care of your addictions problem, it is now on you. The State has attempted many, many times to give the opportunity to rehabilitate yourself and you've chosen not to do so. You've continued to drive and place our citizens at risk[.]

---

[7] The sentencing guidelines are not included with the record on appeal.

<u>Merits</u>

"[A]ny circuit court judge may deny a motion to postpone[.]" *Howard v. State*, 440 Md. 427, 431 (2014). Such a ruling is reviewable on appeal for abuse of discretion. *Id.* at 441. A trial court abuses its discretion when "no reasonable person would take the view adopted by" the trial court, "or when the court acts without reference to any guiding rules or principles." *Kusi v. State*, 438 Md. 362, 386 (2014) (quotation marks and citations omitted). Unless we conclude that the trial court acted arbitrarily, we will reverse only in "exceptional instances where there was prejudicial error." *Prince v. State*, 216 Md. App. 178, 203 (quotation marks and citation omitted), *cert. denied*, 438 Md. 741 (2014).

Here, the only asserted basis of Appellant's argument is that the court failed to exercise any discretion and adhered to a "predetermined notion of how to rule" in denying his request.[8] Assuming *arguendo* that this claim is even preserved, despite the failure to raise it in the trial court, *see Hartman v. State*, 452 Md. 279, 299 (2017) (review of unpreserved claims is discretionary, not mandatory), generally "[a] failure to exercise discretion – for whatever reason – is by definition not a proper exercise of discretion." *State v. Alexander*, 467 Md. 600, 620 (2020). However, a "general rule" is not in and of itself a failure to exercise discretion, but rather "'one of the myriad ways in which discretion may be exercised.'" *Cagle v. State*, 462 Md. 67, 75 (2018) (quoting *Holland v. State*, 122 Md. App. 532, 547 (1998)). And, "discretion consistently exercised the same way is still discretion[.]" *Id.* at 77 (cleaned up).

---

[8] There is no claim under Maryland Rule 4-215.

14

We are not persuaded by Appellant's argument that the trial court acted reflexively in denying his belated requests for postponements. Indeed, we conclude that the court did not apply a blanket policy but considered the circumstances attendant to this case. The court noted that a jury had been called for and was waiting, while another trial was "bumped" so Appellant's could proceed. These factors weighed into the court's decision to deny the belated request. As the United States Supreme Court has explained, "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11 (1983).

We are also unpersuaded as to Appellant's claim with respect to sentencing. *See Kelly v. State*, 195 Md. App. 403, 439 (2010) (concluding no abuse of discretion in denying a postponement of sentencing where "Appellant has failed to identify what information he was unable to present due to the court's denial of his request"), *cert. denied*, 417 Md. 502, *cert. denied*, 563 U.S. 947 (2011). This was a relatively straightforward case, with generally uncontested facts, some of which were supported by stipulation. Appellant's criminal history was proffered without objection, and Appellant and his Defense Counsel both addressed the court on Appellant's behalf in favor of mitigation. We discern no abuse of discretion in the court's denial of the request to postpone sentencing.

III.

Appellant finally avers that the trial court erred in not striking Juror Number 9 for cause. Conceding that the juror stated she could be fair and impartial after she was asked

15

about her familial relationship with law enforcement, Appellant observes that she was not asked if she could be fair and impartial after she was then asked about her feelings about drinking and driving.

The State responds that this issue is not preserved because Defense Counsel: specifically accepted Juror Number 9 when she was called during individual jury selection; used all her peremptory challenges and accepted the jury without objection; and, lodged no objection when Juror Number 9 was appointed to be the foreperson. We concur with the State.

In *voir dire*, Juror Number 9 responded affirmatively to the question asking if any member of the prospective panel had strong feelings about "alcoholism, the use or abuse of alcohol, or alcohol-related traffic driving offenses?" During individual *voir dire*, Juror Number 9 first volunteered that members of her family served in law enforcement in Queen Anne's County. The trial court then inquired:

> THE COURT: So would your experience being raised in a law enforcement family affect your ability to listen to the evidence and judge it fairly and render an impartial and fair verdict?
>
> THE JUROR: I can judge fairly.

Immediately thereafter, and as to the issue raised on appeal, the following transpired:

> THE COURT: All right. You also answered strong feelings about alcoholism, use of alcohol, or any alcohol driving offenses.
>
> THE JUROR: Yeah, that's a problem for me. I'm very concerned about that -- that would be a -- I think I would judge probably harshly in regards to that because I feel like there's so many options. I'm a nurse.

16

There's treatment options out there. You can do something besides put other people at risk.

> THE COURT: All right. We appreciate your honesty and those are all the questions that you answered.

> THE JUROR: Thank you.

At the conclusion of *voir dire*, Defense Counsel moved to strike Juror Number 9, and the following ensued:

> [DEFENSE COUNSEL]: The second one I had was No. 9, was the second one. I'm not going through every single one, Your Honor, don't worry about that, line by line, but she did say that she would judge harshly and was very concerned about DUIs. I think that, again, shows that she would not necessarily be fair and impartial.

> THE COURT: I think -- I remember her.

> [PROSECUTOR]: She said that she could be fair and impartial.

> THE COURT: Yeah, she thought she could. All right. Anybody else for cause?

There was no claim that the prospective juror was responding to a different question when asked whether she could be fair and impartial. No further objection was raised as to Juror Number 9. Indeed, Appellant did not strike Juror Number 9 when the option was available, and stated that she was "[a]cceptable to defense." Appellant also did not object to the selected jury, confirming that the panel was "[a]cceptable to the Defense, Your Honor." Moreover, Appellant did not object when Juror Number 9 was named the foreperson of his jury. Defense Counsel used all four of his allotted peremptory challenges during jury selection. *See* Md. Rule 4-313(a) (except as specifically provided by rule, each party is permitted four peremptory challenges); Md. Code (1974, 2020 Repl. Vol.) § 8-420(c) of the Courts and Judicial Proceedings Article (same).

17

The Supreme Court of Maryland has made clear that appellate questions concerning errors in the search for cause for qualification are subject to the rules on waiver. In *White v. State*, 300 Md. 719 (1984), *cert. denied*, 470 U.S. 1062 (1985), the Court ruled that even if a disqualification for cause is improperly denied, there will not be reversible error if the accused has not exercised all his allowable peremptory challenges. *White*, 300 Md. at 728 (citing *Parker v. State*, 227 Md. 468, 471 (1962)); *accord Ware v. State*, 360 Md. 650, 665 (2000), *cert. denied*, 531 U.S. 1115 (2001). Additionally, the general rule is that challenges with respect to the jury selection process may be waived:

> "When a party complains about the exclusion of someone from or the inclusion of someone in a particular jury, and thereafter states without qualification that the same jury as ultimately chosen is satisfactory or acceptable, the party is clearly waiving or abandoning the earlier complaint about that jury. The party's final position is directly inconsistent with his or her earlier complaint."

*State v. Tejada*, 419 Md. 149, 169 (2011) (quoting *Gilchrist v. State*, 340 Md. 606, 618 (1995)); *accord White*, 300 Md. at 729.

It is true that Juror Number 9 never indicated whether she could be fair and impartial after informing the court that she would "judge harshly" in a case involving "alcoholism, use of alcohol, or any alcohol driving offenses." Although a criminal defendant has a clear and obvious right to an impartial jury, *see Dingle v. State*, 361 Md. 1, 14 (2000) ("[T]he task of the trial judge is to impanel a fair and impartial jury[.]"), not all prospective jurors are "automatically disqualified simply because the prospective juror responds affirmatively to the 'strong feelings' *voir dire* question." *Pearson v. State*, 437 Md. 350, 364 (2014). Here, Appellant waived any challenge to the court's denial of excusing the juror for cause

18

by exercising all his peremptory challenges, announcing that the juror and the final selected jury were "acceptable," and even failing to raise any objection when this same juror was appointed to be the foreperson. As it was waived, we conclude the issue is not preserved for our review and decline to consider it further.

**JUDGMENTS OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED.**

**COSTS TO BE ASSESSED TO APPELLANT.**